## Quigg v. Commonwealth

*Frederick B. Smillie,* of *Smillie & Bean,* for plaintiff. *Paul P. Wisler,* for defendant.

KNIGHT, P. J., January 9, 1945.—This was an appeal from an award of a jury of view, and after trial the jury rendered a verdict in favor of plaintiff in the sum of $3,805.60.

In its motion defendant alleged merely that the verdict was against the law, the evidence, and the weight of the evidence. Counsel for defendant at the argument and in his brief confined himself to two points:

(1) That the trial judge erroneously permitted the jury to allow plaintiff interest or compensation for delay in paying damages from May 26, 1937, the date of the taking; and (2) that the trial judge erred in instructing the jury to the effect that they should consider as an element in fixing the fair market value of the property that there was a right of way over the railroad which bounded one side of the property.

There is no merit in the first point.

It is admitted that the damages have remained unpaid for more than seven years. The act of taking was that of the Commonwealth and not that of plaintiff. True at the expiration of two months after the taking, the landowner has the right or privilege of petitioning to have damages awarded, but the law imposes no duty upon him so to do. If the Commonwealth fails to proceed promptly to pay for what it has already taken, it must pay for the delay. The percentage and the amount of compensation was left to the jury.

The next question is the existence in plaintiff of a right of way over the tracks of the Philadelphia & Reading Railroad Company.

For a proper understanding of the problem, a brief history of the ownership of the tract here involved and an adjoining tract should be given.

Prior to 1931, plaintiff was the owner of a large tract of land through which ran the right of way of the Philadelphia & Reading Railroad. Over the tracks of that railroad there had been established, presumably in accordance with the Act of February 19, 1849, P. L. 79, sec. 12, a crossing, which afforded plaintiff access from either portion of his land over the railroad to the other portion. This crossing was in existence and used in 1937, when the land involved in this case was taken by the Commonwealth.

In 1931 plaintiff deeded to the Commonwealth the southerly portion of the land, specifically reserving to himself and his heirs and assigns the full and uninter-

rupted use of a 30-foot wide right of way over the land conveyed. This right of way leads from the highway across the land conveyed and up to the point where the railroad crossing had been established.

Whether or not the right to this crossing still existed in Quigg at the time of the taking of the tract now in question becomes important, because if there was no crossing right at that time the value of the land taken in 1937 would be merely nominal, as the land would be hemmed in on the south by the railroad and on the north by the Schuylkill River, and there is no other outlet to the land except over the crossing.

The Act of 1849, sec. 12, provides in part: ". . . that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made, a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require; and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company . . ."

The Commonwealth argues that Quigg's right to this crossing no longer exists, that the land taken in 1937 was therefore practically worthless, and that the substantial verdict for plaintiff was not warranted.

In contending that there was no duty on the railroad to continue to maintain the crossing, the Commonwealth suggests two reasons: (1) That the Act of 1849 contemplates a crossing only when the land is used in agricultural pursuits; and (2) since the conveyance in 1931 of a portion of the tract, the Act of 1849 no longer applies, because of the split title to the land through which the railroad passed.

We are of the opinion that there is no merit in the first reason. In 1937 when this land was condemned,

it may not have been actually cultivated but its only use was for farm land. Most of it was cleared and suitable for farming purposes. But we cannot agree that the crossings or causeways provided for by the Act of 1849 contemplated a crossing only when the land is used in agricultural pursuits. It may well be that the use of the crossing is confined by the act to some purpose necessary to the working of the land, but that purpose need not necessarily be farming.

In Pennsylvania Railroad Co. v. Bala Golf Club, 16 Dist. R. 357 (1907), the railroad sought an injunction to prevent golf players from using a crossing in going from one part of the links to another. The injunction was granted as to the players, but the court said in its opinion (p. 359) :

"In the present case, the land is used as a golf course, and in order to keep the links in proper condition, it is necessary to roll them and cut the grass; consequently, the occupier of the land has a right to take its rollers and mowing machines over the crossing."

In Buck Mountain Coal Co. v. Lehigh Coal & Navigation Co., 5 Luz. L. Reg. 51 (1876), the Court of Common Pleas of Luzerne County held that the act applied to coal lands and coal loaded on mine cars.

In Hespenheide et al. v. King, 48 Pitts. L. J. 242 (1901), the Court of Common Pleas of Allegheny County held that the act was not confined to farm lands.

We are aware that there is dicta to support the opposite view (see Ferguson's Petition, 238 Pa. 78 (1913), at page 82), but we have seen no case which holds that the act applies only to farm lands. Even if it were so restricted, we repeat that in 1937 the land herein involved was farm land within the meaning of the act.

The second reason raises a more difficult question.

The Act of 1849 does not declare what shall happen to the crossing if the land on both sides of the railroad ceases to be held under one ownership. It might be argued that the crossing having been established re-

mains despite the fact that title to the land benefited was split. The railroad company is not a party to the proceeding, and there is no evidence that any legal action has ever been taken to discontinue or abolish the crossing. There is nothing in the record to show that the crossing had been abandoned except the fact of diverse ownership.

We are inclined to the view that the act was passed for the benefit of an owner whose land was divided by the railroad, and that if this situation ceased to exist the right of the crossing terminated if it was no longer necessary to the original owner. In 1931 plaintiff sold his land south of the railroad to the Commonwealth reserving the right of way. From 1931 to 1937 the crossing was used by plaintiff, his tenants or other occupants of the land, and in 1937 the Commonwealth condemned and took plaintiff's land on the north side of the railroad.

Since 1937 the situation has been the same as it was before 1931, the land on both sides of the railroad is in one ownership. We do not think that the crossing was automatically abolished when plaintiff sold his land south of the railroad to the Commonwealth, for the crossing was still not only necessary but absolutely essential to plaintiff in reaching his land on the north side of the railroad, particularly in view of the fact that the crossing was used continuously during the period of diverse ownership. Plaintiff when he sold his land south of the railroad to the Commonwealth in 1931 reserved a right of way over the land sold leading from a public road to a point where the crossing crossed the tracks of the railroad. Whatever may have been the legal effect of his sale to the Commonwealth, it was certainly not the intention of plaintiff to abandon his right to use the crossing. A right of way is an easement, an incorporeal hereditament; it is not land nor an estate in the land over which it passes. It is however an interest in the land of another to the extent of the use granted, reserved, or acquired.

We are of the opinion that, under the circumstances here existing, plaintiff, after conveying his land south of the railroad reserving a right of way thereover, remained to the extent of his right to use the easement a possessor or occupant of lands on both sides of the railroad within the meaning of the Act of 1849. Had he reserved the title to a strip of land running from the highway to the crossing, his right to the crossing would probably not be questioned and the practical effect of what he did do is the same. We fully realize the desirability of eliminating grade crossings, but even this desirability cannot obscure the fact that plaintiff's land will be worthless without the means of ingress and egress.

Taking a realistic view of the situation, we know the Commonwealth will make little or no use of the crossing, and that it can readily obtain access to the land which it has acquired north of the railroad by exercising its power to condemn and take land, a power which is not possessed by plaintiff.

And now, January 9, 1945, the motion for a new trial is overruled, and all reasons in support thereof dismissed.